This is agenda number 17, case number 107-129, John Green v. Steven T. Rogers. Hold on for just a minute, counsel. I'm sorry? Hold on for just a minute. Oh, sure, sure. We've got a lot of motion behind you. I want you to have a nice quiet room to work in. Thank you. You may proceed. Thank you, and good morning, Your Honors. Melissa Murphy Petros on behalf of the defendant appellant Steven Rogers. As Justice Hartman wrote in his dissent in Kruger v. Lewis, the problem here is not the application of privilege, but rather deficient pleadings, which precludes consideration of all related issues. Plaintiff here, quite simply, did not plead defamation per se with the specificity and the particularity that has long been required in this state. And the appellate court's opinion to the contrary is not a proper statement of the law on pleading defamation per se in Illinois. It's well established here that a claim for defamation per se needs to be pled with specificity and particularity, and that the court in making that assessment is to determine three criteria. Whether the statement has a precise and readily understood meaning, whether the statement is verifiable, and finally, whether the statement's literary or social context signals factual content. Here, we submit that plaintiff's first amended complaint fails on all three points. First, the statements here, or the alleged statements, do not have a precise and readily understood meaning. The allegations of the complaint, as we discussed at length in our brief, are pled on information and belief only with such phrases as on or about. I note initially that plaintiff nowhere even states in his brief how he found out about the alleged statements in the first place. And presumably, this is something that must be uniquely within his knowledge. He does allege in the complaint that he was not present at CHLL board meetings. So I guess somebody who was there at one or both meetings said something to plaintiff about what defendant may have said. But again, plaintiff has no allegations in the complaint as to who told him about the alleged statements, when did that person say something to him, what did that person or person say. Plaintiff does not identify the specific words allegedly used by the defendant or the specific types of abuse or misconduct. And indeed, the appellate court specifically noted that the statements were not precise in their meaning and that there could be varying levels of abuse or misconduct, although the appellate court then ignored the import of that of its own observation. Again, you know, the statements are made on information and belief, excuse me, the allegations are made on information and belief. And they really are summaries of what the plaintiff, for whatever reason, believes defendant may have said about him at a date really that we don't know. Again, the complaint doesn't tell us the specific dates on which these statements were made. It says on or about March 3rd, I believe, of 2005 and then on or about February 2006. No specificity there. You know, you mentioned earlier about not sufficient specificity. And then, of course, you acknowledged that he wasn't there. So the question, I think, becomes how much can reasonably a court require in specificity if he wasn't there? And then later you referred to who told him, when they told him, what they told him, I guess. Is that what you're talking about, specificity? Yes. That is certainly, I think, the most critical element of lack of specificity here. Presumably, the plaintiff somehow found out that defendant said something about him. But again, his complaint does not say who told him that defendant said this. What did that person repeat to plaintiff? What did that person say to plaintiff about when defendant made a statement or what defendant said? So yes, he wasn't there. But he must know how he found out about these things in the first place. And that's a glaring deficiency from his complaint. And I would point out, this is his first amended complaint. When Judge Kalander and the circuit court dismissed the first amended complaint, he did so without prejudice. He invited the plaintiff to replead and to be more specific. Plaintiff chose not to do that, demonstrating that he's got nothing more specific to say. The statements are not realistically verifiable. Plaintiff urged below, and the appellate court found that. Back to your last point, counsel. And there was discovery at some point of every CHLL board member, right? Plaintiff had issued subpoenas of all the CHLL board members and the CHLL board itself, seeking information, 28 different kinds of documents relating back to, I think, January of 2000. He did issue those. Judge Kalander quashed those subpoenas, again, without prejudice, primarily because plaintiff's counsel acknowledged at the hearing on the motion to, I believe it was the motion to reconsider the order quashing the subpoenas, that he sought this discovery to deter, because he believed that other defamatory statements had been made about plaintiff by the other board members. And so he wanted this discovery, essentially, to see if there were any other causes of action that he might be able to file. And Judge Kalander said, you know, no, we're not going to do that. Your claim is against Mr. Rogers. And again, he did do that without prejudice. The court certainly... And that's my question. Yes. Did the plaintiff, when the First Amendment complaint was dismissed, without prejudice, and the plaintiff decided to stand on that complaint and appeal, when that happened, was there any request at that time, in keeping with Justice Garmon's question, where how much did the plaintiff actually know not being there? Was there a request to get some additional discovery and attempt to replete or not? To my knowledge, and the record is, I think, clear on this, the discovery request at that time had been quashed by the trial court. Again, on the ground that Plaintiff's Counsel said, I'm looking for more statements made by more people that we may wish to sue. He's looking for other defendants. He's looking for other defendants. Plaintiff's Counsel, and the transcripts are pretty clear on this. We have them cited in our brief, but I can't give you the page numbers verbatim. He's very clear that he never argued, if you give me the discovery, Judge, I can get more information about what Defendant Rogers said. If you give me the discovery, I can better respond to this motion to dismiss. He says nothing of the kind. He simply says, we think all these other people maybe said bad things about Plaintiff 2, and I want to see if I can sue them as well. And that's when Judge Kalander was pretty firm and said, we're not going to do that here. And if you think you need something with respect to the defendant, then that's fine. You come back and we'll go from there. But we're not going to use this as a fishing expedition to look for additional defendants. As I mentioned, the statements here are not realistically verifiable. Plaintiff was a volunteer in the Little League for four seasons, the 2000 through 2004 seasons. And he has urged, his only argument for verifiability is that one could speak with everyone with whom he interacted in the Little League over a period of four years that elapsed five years ago, and thereby gather information as to whether these statements of abuse, alleged abuse or misconduct could be verified. This is precisely the endless inquiry that the first district in Rose rejected as fruitless, given the vague nature of the allegations in the complaint. And I think the Rose analysis is particularly persuasive on this point. Certainly under plaintiff's theory, I suppose one would ask every player, parent, umpire, coach who was involved in the Little League for a period of four years about plaintiff's demeanor. I'm not really sure what you would ask, whether a plaintiff abused them or committed some kinds of misconduct. People could have very different ideas of what those things would mean. Again, that harkens back to the overall vagueness and lack of specificity that we have here. Finally, the statement's context does not signal factual content here. We have to look at the complaint as a whole. And here the appellate court really focused on the allegations with respect to these statements being made on information and belief at Little League board meetings. The court did not look at the remaining allegations of the complaint, nor did it properly assess the exhibits that were attached to the complaint and incorporate it into the pleading. Although the appellate court talks about the exhibits in its factual description, when you get to the legal analysis, they focus only on two paragraphs and don't look at anything else. When you look at the other allegations of the complaint, when you look at the whole complaint, what you see, I think, is a picture of a somewhat contentious relationship between the plaintiff and the defendant before the alleged statements were even made. There are allegations with respect to posting a score on the Little League website where the defendant apparently accused the plaintiff of violating pitching protocols and called him a cheater and he wouldn't post the score. And the plaintiff was upset about that. Were some of these statements contained on email? The statements regarding the June 2004 game and also the statement where the plaintiff questions the validity of defendant's election as board president, those are not contained in the email. Those are allegations of the complaint, which, interestingly, are not pled on information and belief, unlike the statements regarding the defamatory statements. Sorry, the allegations regarding the defamatory statements. When you look at the emails and the correspondence that went back and forth, again, you don't signal, these things don't signal a factual content. They don't square, the email correspondence does not square with a man such as defendant saying, you know, I don't think plaintiff should be a coach because he abuses kids and players and umpires and so on and he commits misconduct. When you look at the emails, you have defendant saying, look, plaintiff, we've decided that we don't want you to be a coach, but we want to work with you. We'll put your child on the team of your choice. We encourage you to work with your son's coach, to serve as an informal assistant, to help at practices, to help at games. All these things, all these activities that the defendant was encouraging after a formal coaching decision was made, would certainly have brought plaintiff into contact with Little League players, coaches, and umpires. And so it doesn't make sense that defendant was saying in writing, you know, you should help us by doing these things, by serving as an informal coach, et cetera, et cetera, and then turn around and say, well, no, this guy, you know, those two don't make sense. Yes? Who is the intended audience for these statements that we should be looking at? The statements in the email or the alleged statements at the board meeting? Well, that's it. I mean, the CHLL board meetings, and if it's not those people who are the intended audience, then what should this court determine to be the intended audience of the statements to which we apply the facts? The only intended audience, I believe, of the board meeting statements would actually be other board members. The record is not entirely clear as to, you know, the protocol that the CHLL uses in picking its coaches, but it is clear that it's the board members who sit and review these applications to serve as coaches, and they are the ones who make the decisions. So any statements made by a board member with respect to the qualifications of any potential coach, the intended audience could only be other board members. And what about the email? Well, the emails were sent from defendant to the plaintiff and vice versa, so clearly you have that audience. Also, the other board members were copied. As you recall in the complaint, the first email that defendant sent to plaintiff saying, you know, we've decided not to accept your application to coach, that was sent only from defendant to plaintiff. So plaintiff was the only intended audience for that particular statement. Plaintiff then comes back with a letter, which he copies. He writes the letter to defendant, copies the CHLL board, people within the Little League hierarchy in Indianapolis, and some others. So plaintiff kind of invokes all these other folks. And then in defendant's remaining email correspondence, he did copy, again, though, only other CHLL board members, never anybody outside of the Little League organization. Were the board meetings open to the public just for board members? You know, I can tell you just personally, I don't know. I would presume that they're open only to board meetings. But that raises an interesting point, because plaintiff alleges in his complaint, oh, these statements were made on information and belief at a board meeting, and again on information and belief, the board heard them, and then he says other unidentified residents of Clarendon Hills. That would imply that it's open to the public. I guess he doesn't say in his complaint, you know, who are these people? Even by description, why would other residents of Clarendon Hills be at a board meeting of the Little League where the Little League was selecting coaches? Didn't that statement come up during the election for whatever he was running for at the time? That's another allegation, excuse me, that is extremely vague. What happened is the plaintiff was running for the position of village trustee of Clarendon Hills. He says in the complaint that his two running mates told him that they had been told by a different village trustee and a resident of Clarendon Hills that plaintiff had been kicked out of the Little League because of his temper. And he says also, and this is a quote, defendant was the source of those statements. Now, again, there is just so much there that we don't know. First of all, we don't really know. Again, the plaintiff doesn't say, these are the exact words that my running mates told me. Now, one would think he would at least know precisely what his running mates told him about this incident, but it doesn't, that appears nowhere in the complaint. We don't know, did defendant himself make these statements to the resident and the trustee? Did they hear it from somebody else? Who did that person hear it from? I mean, there's so many links in that chain. And to simply say, well, you know, my running mates told me this, and defendant was the source without connecting it up even by not quoting, this is the precise statement my running mate told me. It fails. Again, it's extremely vague. There's certainly no allegation in the complaint that any such statement played any role in the outcome of that election. Counsel, is it your position that the, back to the e-mails for a second, which indicate that there was an invitation for plaintiff to be active with the team, is your position that it belies any possible conclusion that defendant is accusing him of abuse or misconduct with children because of the contrary nature of the e-mail? Yes, that is our position. The e-mail set forth very clearly that defendant was repeatedly inviting and encouraging the plaintiff to participate in the little league actively, although not in the capacity that plaintiff himself specifically desired, but that he was encouraging active participation. He was encouraging the plaintiff to be involved in his son's team, to be involved with his son's teammates, his son's coach, the umpires, et cetera. That's exactly right. The two just do not mesh at all. Unless you have further questions? There's no separation of time between those and then the later more confrontational statements? No. The e-mails follow very, very quickly. And the e-mails are only with respect to the March of 05 allegations. There's no attachments to the complaint regarding the February 06 allegations, which are similarly vague but identical. They all follow within a matter of days. The abuse is children's statements. Where do they fall into that? Apparently, according to plaintiff's complaint, he alleges that they were made in March of 05 and then they were identical things were said again in February of 06. The e-mails follow very quickly within a few weeks. I believe the first e-mail is defendant telling plaintiff that his application is not accepted. I believe that was March 4th of 05. And the rest of the correspondence is within the 7 to 10-day range. So it was all very alleged. Again, if you look at the timeline, apparently, if you believe the allegations, plaintiff is asserting that on March 3rd or 4th, defendant said plaintiff abuses kids and does these terrible things, and then in the subsequent 7 to 10 days is saying in writing, you know, we want to work with you, we want to help you, we want you to help out with your son's team, we want you to do all these things, and so on. So back to what Justice Thomas said, the two simply don't square. Thank you. May it please the Court, my name is Gary Wills, and I represent the plaintiff in this case, John Green. Mr. Wills, do the statements have any specifics that can be verified or disproved? Yes, they can, Your Honor. The statements are that he engaged in a long pattern of misconduct with children and that he abused players, coaches, and umpires in the CHLL. And this is all statements of objective verifiable fact. You can go there just as you would in any case, take discovery, take written discovery, see if there was any kind of complaints made against him, any disciplinary actions ever registered. You can talk and take depositions just like you could in any case. The nature of the alleged abuse isn't necessary or the nature of the alleged misconduct were the children or what exactly rendered plaintiff unfit to coach? None of those are contained in the statements, but they're not necessary in your opinion? No, they aren't, Your Honor. As the appellate court held, any kind of abuse of children is defamatory per se, and these are things that can be determined. As I said, you see that there was, you know, it's our allegation that there was no kind of disciplinary action. There's no kind of complaints about any kinds of actions like this. So these are all things that can be discovered, and we believe if we're allowed to proceed we'll be able to disprove in this case. And I guess what I'm getting at is that this Court has to determine whether the alleged statements themselves, the alleged statements themselves are reasonably capable of an innocent construction. I'm sorry, an innocent construction. Can we do that from these statements? No. As I said, the appellate court was right in that there cannot be any reasonable innocent construction of this. You know, as the case law says, a court is not required to bend over backwards to make any kind of innocent, to define an innocent construction, and allegations in this day and age of misconduct with children and abuse of children just are not capable of any kind of innocent construction. I went on the Internet yesterday as I was preparing it and just did a Google search on those specific phrases, and I went through pages and pages of hyperlink of various sites, none of which gave any kind of innocent construction to that language. Well, again, and I'm not debating that. If we had an actual statement, but it seems, and that's why I asked some questions about standing on the First Amendment complaining getting some discovery, because it does appear that the allegations are not so much what defendant actually said as what defendant's listeners must have perceived. Would you agree with that? Well, this is a case where the statements were verbal. They weren't written. They were made outside of the defendant, the plaintiff's presence. So that's why they're pled on information and belief. But we believe that they're pled with specificity. You know, they give the words that were given, that there was misconduct with children, that it was abuse of children. So they are specific enough. And in situations like this where the defendant wasn't present, this is the only way on information and belief that you can plead something like this. Well, why did, with respect to the discovery with the CHLL board members, is that it? See, maybe I have the. Clarendon Hills, Little League. Yes, Your Honor, CHLL. With respect to that, is counsel correct that the discovery related to that was an effort to find more defendants rather than to nail down the statement? With all due respect to opposing counsel, that's not correct. In the trial court, we filed a motion to consider. And in that motion, we said, as lawyers want to do, that we feel that we already stated a claim, but that this discovery will allow us to strengthen the claim against Mr. Rogers. So we did. It was not just as they try and present it, a fishing expedition for other defendants. We did seek discovery to help with this, the allegations against Mr. Rogers. And we think that the trial court abused its discretion in denying that discovery. Was that after the First Amendment complaint was dismissed without prejudice? I believe it was after that. I forget the exact, whether we issued a discovery. I believe we issued it before the First Amendment complaint was dismissed. Then we had the discovery denied. They gave us a chance to replead, and we stood on the complaint at that point. And, again, I'll let you go. This is the last thing. But you can understand the problem that we have is if we have a complaint that all we know is what the plaintiff believes defendants and listeners concluded after hearing the statements without any specifics of what those statements were. And I'm not saying there isn't difficulty in getting the actual statements. But I don't think we have anywhere where it's said in the complaint that these are the actual statements that were made, right? Well, the case law doesn't require verbatim or quotation marks around the words. And I respectfully suggest that we have put it with specificity, because the purpose of the specificity is so that the defendant can answer the complaint and assert any affirmative defenses. And that's exactly what's happened here. The defendant has asserted affirmative defenses in the trial court, has argued the innocent construction rule, has argued the First Amendment. He's done that at the trial court, twice at the appellate court, and before this court. And the appellate court was able to analyze the situation. There was enough specificity to see there whether the innocent construction rule applies or not. So we believe that it is specific and that requiring anything more of an oral utterance like this outside of your presence would just right at the threshold cut off defamation claims that have a lot of merit and would just, you know, lead to situations where people can make statements outside of somebody's presence with impunity. Counsel, do we have to find that defendants' alleged statements impute criminal behavior to your client? Or is some lesser meaning still, would that be sufficient to sustain your claim? We don't, it's not necessary. We brought the complaint saying it was defamatory per se under three of the different possible elements, one of which was imputing criminal behavior. We believe that it does, that the abuse of children obviously does impute criminal behavior. The appellate court didn't agree with that, and we didn't appeal that decision. Based on the fact the appellate court did find that it showed an inability and a prejudice to the plaintiff in his profession. So under that element of a claim for defamation per se, we figure the case can go forward. What is the nexus between the allegation with regard to his actions at the Little League and his profession, being an attorney and a dentist? Both of those are highly regulated professions that have high ethical standards. It's a statute that involves the dentistry profession. There's obviously ethical canons for attorneys, just as there are for judges. And imputing, making statements that describe you as being involved with misconduct with children and abusing children, obviously could be, not just could be, but are highly prejudicial to anybody in that sort of a profession. And although the appellate court did not address the issue, we think the fact that he's, that his volunteer coaching is also a profession that should be considered for purposes of this defamation action. There's that Musickowski case that was a Northern District of Illinois case, but applied Illinois law and said that there's no requirement for you to be actually paid for something, for it to be one of your professions. And the plaintiff in this case, this was not just a one-off time. He'd been coaching and been involved with the Little League for many years at this point. So it obviously does prejudice him in that profession also. How do you address, Mr. Wills, the e-mails and whether or not they contest some of the allegations? Well, the e-mails, first of all, do not contradict. They're not what we're basing the defamation claim on. They're not the statements that we say are defamatory. And it's not interesting that those aren't alleged, those allegations aren't on information of belief, like the opposing counsel said, because they're obviously written things in our possession, so we don't have to allege those on information and belief like we do with these verbal statements. But more importantly, they don't contradict, because the standard, as you're aware, for a motion like this, a 2615, is that there's no set of circumstances under which the plaintiff could state a claim. And the fact that later on Mr. Rogers wrote some e-mails saying that, okay, maybe we can have you not be a coach but be involved in some other way, does not refute the fact that he made these statements to the board members. So in that sense, they're not relevant at all for that. And these are things that were made after the fact, after Mr. Green raised an issue with what happened. So, you know, he could be backpedaling on what was said. That's also not inconsistent in any way with the fact that he made these statements and they were defamatory. Does the fact that these comments were made at a board meeting to discuss coaches' qualifications anywhere figure into our analysis, and maybe more specifically, as to whether there's an innocence construction with regard to the word conduct or abuse of children and umpires and other coaches? I think it definitely does factor very strongly into the analysis, as is the three factors which the Solea technology case set forth that have to be considered. The third one is the literary social context of the statements. And this is not a situation where it was set forth in an advertisement between competitors, was just loose and figurative language. This was done at a board meeting where the purpose of the board meeting was to determine who would be allowed to coach the next year. So these, at the very least, statements are intended to convey that he has factual background and factual support for this. And they're intended for the other board members to rely on them, which they did in denying Mr. Green the right to manage the following year. So I think the fact that these are at this board meeting is actually very highly relevant. Is it going to be, again, this is going back a little bit, but in our innocent construction analysis, we're to give the allegedly defamatory words their natural and obvious meaning and interpret them as they appear to have been used in according to the idea, ideas they were intended to convey to the reasonable reader or listener. Can we do that without the actual words? Well, as I said, on information bleep, these are the actual words. And they're set forward in our complaint. They have to be taken as true for purposes of this motion. So the analysis then can and should be made about what the reasonable interpretation of somebody who's engaged in a long pattern of misconduct with children is. So it's analysis that can be made under what's been alleged in our complaint. And as the appellate court correctly did, they looked at Black's Law Dictionary and said that misconduct is a dereliction of duty, an unlawful or improper behavior. And there is no reasonable and innocent construction of that. And it's not just the word misconduct. It's a long pattern of misconduct which denotes some sort of serial behavior of wrongful activities with children. So this is an analysis that can be made based on what we've alleged in the complaint. I've covered everything that I wanted to. Your questions have covered everything I wanted to. So unless you have any other questions, I'll end right here. I would just like to briefly address some of the points opposing counsel made. First of all, our primary argument throughout this litigation has always been that the complaint is not pled with the requisite specificity. The alternative, we did plead in the alternative that if a court were to find that this was adequately specific, then the innocent construction or First Amendment defenses would apply. But by pleading alternative affirmative defenses, we certainly have in no way conceded that this complaint is adequate and specific under the laws of pleading which are applicable to defamation per se. Because it is quite simply not. With respect to the statement about volunteer coaching, counsel said the appellate court made no finding as to his allegation that the statements imputed his ability to serve as a coach. In fact, the appellate court found that those statements were subject to an innocent construction. There were three allegations, abuse, misconduct, and I guess a bad coach. And the appellate court says, turning to the third alleged statement, that the plaintiff was unfit to be assigned as a coach, we hold that it is not defamatory per se because it does not prejudice the plaintiff or impute a lack of ability in his profession. It is capable of an innocent construction. And the court goes on to say that it's capable of an innocent construction because it could mean nothing more than that the plaintiff did not fit in with the board members of CHLL. What about the abuse? What did the court say about the abuse? Innocent construction. The appellate court found that a statement regarding abuse with respect to children could never be subject to an innocent construction. As we discussed in our brief and cited the Harrison opinion from the first district, that's simply not the law of this state. The innocent construction defense is viable when statements involve children. And again, you know, abuse can mean, it could mean something like yelling. It could mean something like shouting. It could mean hitting. It could mean anything.  There was another article which we amended to our reply brief from the Chicago Sun-Times regarding the Chicago Public Schools new rule prohibiting displays of temper among coaches. And as we discussed in our reply brief, all of the coaches who were interviewed said, you know, I don't know what a display of temper is. If I yell at a kid to, you know, shoot a basket, is that a display of temper? Am I going to get in trouble? You know, standing on the sidelines, it's easy to look at a coach who's very volatile and say, oh, that's an abusive person. But it's not always necessarily so. And that is why we need specificity in pleading these cases. And I would stress, defamation per se, damages are presumed. Plaintiff doesn't have to prove them. And that's an enormous evidentiary gift to the plaintiff. And this court made very clear into it that that gift comes at a price, and the price is specificity. Bare minimum, plaintiff has got to be able to prove how he found out about these things in the first place. He's had two shots. He still hasn't done that. His counsel stood here today and was not able to say how plaintiff found out about this belief that he has in the first place. And that's a huge gap. And, you know, no amount of discovery can cure that particular gap. He either knows why he believes this or he doesn't know. And if he has specifics in that, it should have been in the complaint, twice should have been in the complaint. With respect to the discovery issue, it's at pages 413 and 414 of the record. This is the hearing on plaintiff's motion to reconsider the discovery order, which precedes the court's grant of the motion to dismiss. And I can just read a brief quote. Plaintiff's counsel says to the judge, we believe in explaining why he wants the discovery and why he's urging reconsideration. Quote, we believe that there are other publications that were made by other third parties that will be revealed in the records we subpoenaed. The court, we will go in an orderly course in this case. I am not concerned about other defendants. If you have information against other defendants, file additional suits. I am not interested in you using this case. Well, I have said what I intend to say. I am not going to vacate the protective order at this time. So, again, it's clear that he was looking, in large part, for material with which to file additional suits against additional board members. And Judge Colander rightly said that that's not the purpose of discovery. With respect to the innocent construction rule, again, I would just stress what this court held as recently as to it. You know, when you have multiple possible interpretations, if there is any reasonable construction, that is the one that sticks. And this goes back to the fact that damages are presumed. He doesn't have to plead them. And so we must know exactly what was said or something very close to it. And, you know, even in cases where we do know the actual words, such as Rose, where it was all the allegations, the defamatory statements, were in an e-mail, we knew who said them, who they were said to, and when they were said, the court still said, you know what, that's not specific enough to be considered actionable as defamation per se. Certainly plaintiff had the opportunity, had he wished to pursue this as a defamation per quad action, he chose his course so that he wouldn't have to prove damages. And to proceed along that path, he needs to provide specifics, which he hasn't done. And the appellate court simply misstated the law in this state. Its opinion cannot stand. Thank you. Thank you, counsel. Case number 107-129 will be taken under advisement as a general matter.